897 F.2d 1168
 283 U.S.App.D.C. 146
 Unpublished Disposition
NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
PUBLIC SERVICE COMMISSION OF the DISTRICT OF COLUMBIA, Petitioner,
v.
FEDERAL COMMUNICATIONS COMMISSION and United States of
America, Respondents.
 No. 88-1661.
 United States Court of Appeals, District of Columbia Circuit.
 March 14, 1990.
 
 Before WALD, Chief Judge, and MIKVA and HARRY T. EDWARDS, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This cause came to be heard on the petition for review of an order and an order on reconsideration of the Federal Communications Commission, and was briefed by counsel. The issues have been accorded full consideration by the Court, including oral argument, and occasion no need for a published opinion. See D.C.Cir. Rules 14(c), 14(d). For the reasons stated in the accompanying Memorandum, it is
 
 
 2
 ORDERED AND ADJUDGED, by the Court, that the petition for review is hereby denied, and the Federal Communications Commission's orders are hereby affirmed.
 
 
 3
 The Clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir. Rule 15.
 
 MEMORANDUM
 
 4
 Petitioner District of Columbia Public Service Commission ("D.C. PSC") challenges four aspects of respondent Federal Communication Commission's ("FCC") decision, released in May 1987, to increase the cap on subscriber line charges ("SLCs") for residential and single-line business customers to $3.50. In The Matter of MTS and WATS Market Structure and Amendment of Part 67 of the Commission's Rules and Establishment of a Joint Board, Report and Order, CC Docket Nos. 78-72 and 80-286, 2 F.C.C.Rcd 2953, 2957 (1987) ("Order "). The FCC's Order was based largely on the recommendation of a statutorily created Federal-State Joint Board, see 47 U.S.C. Sec. 410(c) (1982), issued in March 1987. Recommended Decision and Order In the Matter of MTS and WATS Market Structure and Amendment of Part 67 of the Commission's Rules and Establishment of a Joint Board, CC Docket Nos. 78-72 and 80-286, 2 F.C.C.Rcd 2324 (1987) ("Joint Board Recommended Decision "). After the FCC denied petitioner's request for reconsideration of the SLC increase, Memorandum Opinion and Order on Reconsideration and Order Inviting Comments In The Matter of MTS and WATS Market Structure and Amendment of Part 67 of the Commission's Rules and Establishment of a Joint Board, CC Docket Nos. 78-72 and 80-286, 3 F.C.C.Rcd 4543 (1988) ("Order on Reconsideration "), this appeal followed. We affirm the FCC's Order and Order on Reconsideration.
 
 I. NON-TRAFFIC SENSITIVE COSTS
 
 5
 Petitioner contends that the FCC failed to address comments made during the rulemaking proceeding suggesting that the SLCs improperly included traffic sensitive costs. Contrary to petitioner's argument, however, no mandate requires local loop costs to be fully non-traffic sensitive ("NTS") for the FCC to recover them through SLCs.
 
 
 6
 D.C. PSC correctly points out that this court appeared to assume that local loop costs were NTS when it approved the FCC's plan to charge end-users a flat fee to recover a percentage of the interstate portion of local loop costs. National Ass'n of Regulatory Utility Commissioners v. FCC, 737 F.2d 1095 (D.C.Cir.1984) ("NARUC "). NARUC explained that the fee reflects costs caused "by the subscriber's connection into the interstate network, which enables the subscriber to make interstate calls." Id. at 1113. Thus, NARUC suggested that the number of calls a subscriber makes does not affect local loop costs. Id. at 1114.
 
 
 7
 The NARUC court did not, however, preclude the possibility that local loop costs are traffic sensitive insofar as the number of users in the loop might affect the type and quality of equipment needed. Indeed, NARUC established no explicit rule that the FCC could not recover any traffic sensitive costs through a flat fee. Thus, we disagree with D.C. PSC's underlying assumption that the inclusion of any traffic sensitive costs in the SLC represented a significant change in FCC policy requiring formal rulemaking proceedings.
 
 
 8
 In any event, the Joint Board Recommended Decision indicated that even with higher SLCs, the interexchange carriers ("IXCs") would "pay fully" for traffic sensitive costs. Joint Board Recommended Decision, 2 F.C.C.Rcd at 2330. Under the Joint Board's approach, IXCs and end-users paying SLCs would split the recovery of NTS costs. Id. Petitioner presents no specific evidence of the type or extent of traffic sensitive costs included in the higher SLC, and does not explain why a $3.50 SLC cap is inconsistent, on a national scale, with a 50-50 division of local loop costs between end-users and SLCs. We cannot conclude, therefore, that the FCC acted arbitrarily or capriciously in not responding to the comments cited by petitioner claiming that some local loop costs are traffic sensitive. See D.C. PSC Br. at 17-18.
 
 II. UNIVERSAL SERVICE
 
 9
 D.C. PSC maintains that the Joint Board and the FCC did not explain rationally why the higher SLCs were consistent with the FCC's goal of providing universal telephone service. In particular, D.C. PSC claims that the Joint Board and the FCC (1) did not support their assertion that declines in low-income penetration since SLCs were instituted were insignificant; (2) did not account for the likelihood of higher intrastate rates in the near future; (3) did not consider the likelihood of increased subscriber disconnections resulting from higher SLCs; and (4) imposed an excessive burden of proof on parties claiming that the higher SLCs have a negative impact on universal service. We consider these contentions in turn.
 
 
 10
 (1) Relying on data from the Census Bureau and local telephone companies indicating an increase in overall telephone penetration, the Joint Board explained that evidence of decreasing telephone penetration among low-income subscribers since the institution of SLCs was flawed because it did not properly account for inflation. Joint Board Recommended Decision, 2 F.C.C.Rcd at 2354 n. 54. To support this conclusion, the FCC cited voluntary studies conducted by the Bell Operating Companies finding no evidence that the SLC increase affected the voluntary disconnection rate. Order on Reconsideration, 3 F.C.C.Rcd at 4546. Since D.C. PSC provides no evidence that declines in penetration were linked to the higher SLCs rather than to increases in other subscription or usage costs, we cannot conclude that the FCC arbitrarily and capriciously ignored the effect of higher SLC on low-income subscribership.
 
 
 11
 Petitioner's other contentions are no more persuasive, and we dismiss them in turn. (2) The phased increase in SLCs from 1987 to 1989 reasonably accommodated increasing pressure on intrastate telephone rates. (3) The Link Up America lifeline assistance program, financed through the higher SLCs, see Order, 2 F.C.C.Rcd at 2958, mitigates the danger of increased disconnections resulting from the higher SLCs. (4) The FCC's "open docket" monitoring plan, id. at 2959, as well as the Joint Board's and FCC's 90-day review in advance of the last two incremental SLC increases up to the $3.50 cap, Order on Reconsideration, 3 F.C.C.Rcd at 4547, provided adequate avenues for interested parties to voice concerns about declining penetration levels.
 
 
 12
 We find, in sum, that the Joint Board and FCC rationally addressed petitioner's concerns about the effect of the higher SLCs on universal service.
 
 III. UNECONOMIC BYPASS
 
 13
 Petitioner asserts that the FCC failed to support its contention that the continuing threat of uneconomic bypass justified the higher SLCs. Again, we disagree.
 
 
 14
 The Joint Board cited studies by the General Accounting Office and by several Bell Operating Companies demonstrating present or future service bypass threats. Joint Board Recommended Decision, 2 F.C.C.Rcd at 2326. By contrast, D.C. PSC's arguments that service-related bypass is disappearing fail to account for increased economies of scale that are likely to result as the higher SLCs bring down common carrier line charges ("CCLCs") and customers' incentives to use all forms of non-common carrier lines diminish in turn. Petitioner provides no evidence, moreover, that the decline in common carrier line charges ("CCLCs") is not linked to the increased SLCs and has not substantially reduced interstate toll charges for many customers. Even if petitioner is correct that a $3.50 SLC is higher than necessary to achieve the desired CCLC reduction, the FCC properly considered other factors, such as the provision of lifeline assistance programs to promote universal service, in setting the SLC level. See NARUC, 737 F.2d at 1141 (figure selected by agency satisfies standard of review so long as it reflects informed discretion).
 
 
 15
 Petitioner contends that the FCC has failed to meet its "promise" to the NARUC court to determine the precise level of charges necessary to deter bypass. This argument, however, far overstates the FCC's obligations to this court. NARUC approved flat end-user fees as a response to uneconomic bypass despite the FCC's lack of a "definitive analysis" of the bypass problem. NARUC, 737 F.2d at 1117. Deferring to the FCC's "deductions based on [its] expert knowledge," NARUC found the FCC's approach neither arbitrary nor capricious, despite its "predictive, judgmental" character. Id. at 1117-18. Although NARUC cited the FCC's promises to "develop and analyze additional information with respect to the extent and dangers of bypass," and "to use this additional information to design the transition plan," id. at 1118, the FCC did not promise--nor did NARUC require it--to make detailed calculations or reach specific conclusions about bypass by a particular date. The evidence of bypass that the Joint Board and the FCC did muster underscores the continuing threat of service bypass and renders reasonable the FCC's decisions based on that perceived threat.
 
 
 16
 The FCC explained in its Order that while facilities bypass is a "significant long-term problem," service bypass presented a "more immediate concern" that the Commission expected the higher SLC to remedy. Order, 2 F.C.C.Rcd at 2959. Since the FCC does not maintain that the SLC will combat the uneconomic effects of facilities bypass, petitioner's allusion to AT & T's contention that facilities bypass is not a current problem, D.C. PSC Br. at 22 (citing Reply Comments of the National Association of State Utility Consumer Advocates (Oct. 8, 1986), Joint Appendix ("J.A.") 166), is not a germane criticism of the SLC increases.
 
 
 17
 IV. DISTRICT OF COLUMBIA'S SPECIAL CIRCUMSTANCES
 
 
 18
 D.C. PSC's final contention is that in light of the abnormally large share of NTS costs falling on District of Columbia end-users, the FCC failed to provide a reasoned basis for refusing to reduce the SLC in the District. While D.C. PSC notes that under the higher SLC, District subscribers pay more than 50% of local loop costs, primarily because of the absence of intrastate IXCs in the District, see Petition for Reconsideration of the Public Service Commission of the District of Columbia (July 9, 1987), J.A. 238, 248, we do not believe that the FCC's denial of special treatment for District users was arbitrary or capricious.
 
 
 19
 Petitioner substantially overstates the SLC's effect on District users. Petitioner's analysis focuses on the "base factor portion" of NTS local loop costs, which excludes NTS costs related to customer premises equipment, inside wire, pay telephone and lifeline assistance. FCC Br. at 27-28. Although petitioner contends that these additional costs are not part of local loop costs, the Joint Board's recommendation explains that these costs are "incurred by the exchange carriers independent of IXC usage of the network." Joint Board Recommended Decision, 2 F.C.C.Rcd at 2330, 2356 n. 87. If these fixed costs are properly taken into account as local loop costs, then even with a $3.50 SLC, a District end-user would pay only about two-thirds of these NTS costs. Opposition of American Telephone and Telegraph Company to Petitions for Reconsideration, Attachment B (Aug. 5, 1987), J.A. 256, 280.[1] This amount is within reasonable striking distance of the FCC's 50% target, especially in view of the benefits that customers in low-cost jurisdictions, such as the District, enjoy as a result of the higher SLC. Order on Reconsideration, 3 F.C.C.Rcd at 4558 n. 61.
 
 
 20
 The FCC explained that lowering the SLC for users in low-cost areas would require customers in higher-cost areas to pay "substantially higher" SLCs. Id. at 4547. Although the relatively small loss of revenue resulting from a lower District SLC could easily be recovered from other jurisdictions, D.C. PSC does not consider the possible effect on nationwide SLCs if the FCC lowered the SLC in other jurisdictions sharing the District's characteristics. We conclude, therefore, that the FCC's decision not to mitigate the effect of the SLC increases on District users was not arbitrary or capricious.
 
 V. CONCLUSION
 
 21
 Since we find that the FCC responded reasonably to all of the challenges raised by petitioner to the higher SLC, we affirm the FCC's Order and Order on Reconsideration.
 
 
 22
 So ordered.
 
 
 
 [1]
 In fact, as FCC counsel noted at oral argument, District end-users pay only a $2.85 SLC, since that amount is sufficient to cover local loop costs